(No. 6541. December 17, 1938.)

STATE, Respondent, v. SAWTOOTH MEN'S CLUB, a Nonprofit Corporation, and Its Manager, E. W. RUMMERFIELD et al., Appellants.

[85 Pac. (2d) 695.]

618

J. M. Lampert, for Appellants.

Willis C. Moffatt, Prosecuting Attorney, and Kenneth O'Leary, Deputy Prosecuting Attorney, for Respondent.

Chapman & Chapman and Paul S. Boyd, as *Amicus Curiae*.

BUDGE, J.—This action was brought under the provisions of chapter 103, Idaho Sessions Laws, 1935, seeking to close a certain building for the period of one year.

The complaint filed alleged certain premises, together with furniture, fixtures, vessels and utensils had been maintained and operated as a place where alcoholic liquors are sold and kept with intent to sell, and that said premises and property are a public and common nuisance, and a temporary writ of injunction and abatement and an order to show cause were applied for, affidavit of one L. C. Boyle being filed in support of the motion for order to show cause.

Order to show cause issued. Appellant, through its manager E. W. Rummerfield, demurred to the complaint by general demurrer, demurrer on the ground of uncertainty and ambiguity, on the ground costs, fines and liens are in the nature of criminal proceedings and therefore should not be presented before a court of equity, and that the action sought to take property of appellants without due process of law, and an answer was later filed. A temporary injunction issued and thereafter the demurrers, general and special, were overruled and the court denied a motion to modify the temporary injunction. Findings of fact and conclusions of law were waived and certain facts were stipulated, essentially as follows:

1. That the Sawtooth Men's Club at all times mentioned was and now is a non-profit corporation organized and existing under and by virtue of the laws of the State of Idaho.

2. That E. W. Rummerfield was manager of said club.

3. That said Sawtooth Men's Club is the lessee to the premises described.

4. That said club owns the fixtures, furniture, vessels and contents located in said premises.

5. "That the said Sawtooth Men's Club . . . . was on the 10th day of September, 1937, maintained and operated as a place wherein alcoholic liquors as defined by *sub*-section 4, Chapter 103, of the Idaho Session Laws of 1935, were sold and were kept with intent to sell or to be given away in violation of the provisions of Chapter 103 . . . . by . . . . Sawtooth Men's Club and its manager, E. W. Rummerfield and his agents, servants, and representatives."

6. "That on the 10th day of September, 1937, the said E. W. Rummerfield, as manager of the said club and proprietor of the said premises, did, intentionally, through his agents, servants and representatives, sell and dispense in said premises, . . . . alcoholic liquors to O. J. Shaw, . . . . and L. C. Boyle . . . . ; and did keep said alcoholic liquors within said premises with intent to sell the same."

Thereafter judgment was entered that the premises be abated for one year, and that the sheriff take whatever steps he deemed necessary to padlock and abate, and to effectually and securely close said building and that the appellants be restrained and enjoined from operating, renting, conducting or in anywise using the premises for a period of one year, from which this appeal was taken.

Appellants' first assignment is that the court erred in overruling their demurrer that the complaint was ambiguous, uncertain and unintelligible. In what respect the complaint is deemed ambiguous, uncertain and unintelligible is nowhere pointed out in appellants' brief. It further appears that the objection to the original complaint as recited in the demurrer, namely:

"In paragraph VI of said complaint it seeks an injunction, and that in paragraph one of the prayer it requests a temporary injunction as prayed for in the petition filed herein, whereas in said petition filed therewith it petitions the Court to order the sheriff of Ada County to padlock, abate and keep said premises."

was clarified in the amended complaint, to which the demurrer was deemed to apply. We find no error in the lower court's ruling.

█ Appellants next urge that the court erred in overruling their "demurrer to that portion of the complaint asking penalty and the imposition of fines and imposing of liens in an equitable action." A petition otherwise stating a cause of action is not subject to demurrer because it seeks to recover more relief than that to which plaintiff is entitled. (*Idaho Irr. Co. v. Dill*, 25 Ida. 711, 139 Pac. 714; *Roberts v. Lehl*, 27 Colo. App. 351, 149 Pac. 851; *Ventura County v. Clay*, 114 Cal. 242, 46 Pac. 9; *Moropoulos v. C. H. & O. B. Fuller Co.*, 186 Cal. 679, 200 Pac. 601; *Anderson v. Muhr*, 36 Okl. 184, 128 Pac. 296.)

"Where a complaint in a proceeding to abate and enjoin an illegal dealing in intoxicating liquors states a good cause of action, it is not bad because complainant seeks greater relief than is allowable by praying for the imposition of the punishment provided by the criminal laws for the illegal sale of liquor but he is still entitled to have all of the relief to which he shows a right and which is in whole or in part appropriate to the prayer." (*State v. Marshall*, 100 Miss. 626, 56 So. 792, Ann. Cas. 1914A, 434; 33 C. J. 697.)

Appellants assign as error the action of the court in overruling their demurrer on the ground the "action seeks to take defendants' property without due process of law, and that, in that respect, it is wholly unconstitutional and void," and in entering the decree ordering the property and premises be abated for a period of one year, for the same reason, citing *State v. Kasiska*, 27 Ida. 548, 150 Pac. 17, to the proposition that:

"The closing of a building and a denial of the right to use the same for any purpose whatever as in the final order and decree entered in this case, is a taking of property without due process of law, and void."

█ An examination of *State v. Kasiska, supra*, discloses that the remarks contained in the opinion upon which appellants rely were made with reference to a conjectural situation not before the court and that it therein further stated:

"The state is not seeking in this action to forfeit the title to said property to the state, and the statute provides for no forfeiture. It simply provides for the abatement of what the legislature considered a moral disease and a nuisance to the

public, in the same sense that our health statutes provide for a quarantine against physical disease. The trial judge no doubt arrived at the conclusion that said hotel as managed by the defendant was in and of itself a nuisance which the state ought to abate. It was not the bar-room; it was not the drinking of liquor; it was simply the hotel itself, which from the manner and method of its use became a nuisance within the meaning of sec. 2 of said act. Such being the case, the fourteenth amendment to the United States constitution guaranteeing due process of law does not abridge or affect in any way the power of the state to abate such a nuisance as the said hotel is shown to be by the method and manner in which it was conducted.''

An examination of the authorities leads to the conclusion that it is the settled law that the closing of a building and denial of the right to use the same for any purpose, especially under statutory provisions similar to those involved herein, is not a taking of property without due process of law. (*Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205; *In re Crane,* 27 Ida. 671, 151 Pac. 1006, L. R. A. 1918A, 842; *United States v. Boynton,* 297 Fed. 261.; *United States v. Reisenweber,* (C. C. A.) 288 Fed. 520; *State v. Mercier,* 70 Mont. 333, 225 Pac. 802; *Chase v. Proprietors of Revere House,* 232 Mass. 88, 122 N. E. 162; *In re Love,* 205 App. Div. 363, 199 N. Y. Supp. 530.)

Appellants urge that the court erred in overruling the demurrer on the ground it was sought to have an equitable remedy in an action under a penal statute, contending that a proceeding seeking the forfeiture of property because of failure to comply with the law is a proceeding at law with the accompanying right of trial by jury. Jurisdiction of a court of equity over the abatement and suppression of a nuisance, either public or private, is settled, and may be exercised although the nuisance is made by statute an indictable offense. (*Chase v. Proprietor of Revere House, supra; United States v. Stevens,* 130 Conn. 7, 130 Atl. 249; *State v. Mercier, supra; Lewisohn v. United States,* 278 Fed. 421.)

''Equally untenable is the proposition that proceedings in equity for the purposes indicated in the thirteenth section of the statute are inconsistent with due process of law. 'In re-

gard to public nuisances,' Mr. Justice Story says, 'the jurisdiction of courts of equity seems to be of a very ancient date. . . . . In case of public nuisances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information also lies in equity to redress the grievance by way of injunction.' 2 Story, Eq. secs. 921, 922. The ground of this jurisdiction in cases of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual, and permanent remedy than can be had at law. . . . . This is a salutary jurisdiction especially where a nuisance affects the health, morals, or safety of the community.'' (*Mugler v. Kansas, supra.*)

Appellants' fifth assignment that the court erred in denying their motion that the issue *on the hearing for a temporary injunction,* be limited to that which is necessary to abate the alleged nuisance, appears to be a question not properly before this court for the reason that the appeal is not taken with reference to any rulings upon the temporary injunction but rather from the later decree and order made and entered December 24, 1937.

It is urged that the judgment holding that upon the facts in this case it was established that a nuisance existed constituted error for the reason that a nuisance is a continuing or recurrent offense and not an isolated or single offense consisting of two sales on one day as disclosed by the stipulated facts. It was stipulated that appellant club was on September 10, 1937, *maintained and operated* as a place where alcoholic liquors were sold and *were kept with intent to sell* or to be given away *in violation* of the provisions of chapter 103, by appellants, and that on September 10, 1937, Rummerfield, the manager did *intentionally* through his agents, servants and representatives, sell and dispense in said premises alcoholic liquors to O. J. Shaw and L. C. Boyle and did *keep* said alcoholic liquors within said premises with intent to sell the same.

The Idaho Liquor Control Act, chapter 103, 1935 Session Laws, contains the following provisions, among others:

''Section 1: This act shall be cited as the Idaho Liquor Control Act, and shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace,

morals and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose, and it is declared to be the public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, except as hereinafter provided for in this Act through the medium of an Idaho Liquor Control Commission by this Act created. . . . . ''

''Section 57: The building, erection, or place, or the ground itself, in or upon which the unlawful manufacture or sale, or keeping with intent to sell, or give away, any alcoholic liquors is carried on or continued or exists, and any vehicle or other means of conveyance used in transporting such liquor in violation of this Act, and the furniture, fixtures, vessels and contents, kept or used in connection therewith, are declared a nuisance and shall be abated as in this Act provided.''

█ Special stress is laid upon the words ''carried on or continued or exists,'' appearing in section 57, by appellants, it being urged this language indicates the notion of a continuous or a recurrent violation, and that the act thus contemplates that an habitual, continuous and recurrent offense must be shown in order to constitute a nuisance within the meaning of the act. The word ''or,'' used in the foregoing quoted expression, is defined in Webster's New International Dictionary as:

''A coordinating particle that marks an alternative; as, you may read *or* may write,—that is, you may do one of the things at your pleasure, but not both. It often connects a series of words or propositions, presenting a choice of either; as, he may study law or medicine or he may go into trade.''

Black's Law Dictionary, third edition defines ''Or'' as:

''A disjunctive particle used to express an alternative or to give a choice of one among two or more things.''

█ ''Exists,'' one of the alternatives stated in section 57, is defined by Black's Law Dictionary, third edition, as:

''To live; to have life or animation; to be in present force, activity, or effect at a given time; as in speaking of 'existing' contracts, creditors, debts, laws, rights, or liens. *Merritt v. Grover*, 57 Iowa, 493, 10 N. W. 879; *Whitaker v. Rice*, 9 Minn. 13 (Gil. 1) 86 Am. Dec. 78; *Wing v. Slater*, 19

R. I. 597, 35 Atl. 302, 33 L. R. A. 566; *Larrie v. State,* 5 Ind. 525, 526; *Godwin v. Banks,* 87 Md. 425, 40 Atl. 268; *Poe v Poe,* 125 Ark. 391, 188 S. W. 1190; *In re Havel's Estate,* 156 Minn. 253, 194 N. W. 633, 34 A. L. R. 1300.''

Webster's New International Dictionary defines ''Exist'': ''1. To be or continue to be, in fact: have actual being.''

From such definitions it would appear that the foregoing quoted section 57 indicates the notion that if there *be* a violation, *or continue to be* violations, of the act, the building, erection, or place, or the ground itself and the vehicles, furniture, fixtures, vessels and contents kept or used in connection therewith constitute a nuisance to be abated as in the act provided. It may also be observed that appellants fail to state how many sales in excess of one, or for how long a time violations must be continued, in order to constitute what appellants term ''continuous or recurrent violations.'' The stipulation concedes that appellant club was maintained and operated for at least one day as a place where alcoholic liquors as defined by section 4, chapter 103, were sold and were kept with intent to sell or to be given away *in violation of the provisions of chapter 103* by appellant club, its manager and his agents, servants and representatives. It is further stipulated that at least two sales were made, a continuation of violation to the extent of at least one sale. It may be conceded that the cases are not altogether uniform upon the question as to whether proceedings to abate a nuisance can be sustained upon the proof of a single sale or act in violation of the statute. It has been held and we believe the weight of authority sustains the proposition that the test of a statutory nuisance, under a statute not prescribing the number of violations or the length of time violation must continue in order to constitute the offense, is not the number of sales made or the length of time liquor is kept upon the premises, but is whether the place is maintained for the keeping and sale of liquor in the sense of the statute, and such was conceded by the stipulation herein.

Appellants' eighth assignment of error is that the court erred in overruling the general demurrer, the pleading not being properly verified. Failure to properly and season-

ably object waives any right appellants may have had to object to the verification.

"*The verification is no part of the pleading,* but is only a formality required to give it solemnity, and if a party does not make a specific objection to the pleading on that ground, he is presumed to waive it." (Emphasis inserted.) (*Pence v. Durbin,* 1 Ida. 550.)

(*Commercial Bank & Trust Company v. Jordan,* 85 Mont. 375, 278 Pac. 832, 65 A. L. R. 968; 21 R. C. L. 617.)

It follows that the judgment must be affirmed and it is so ordered.

Holden, C. J., and Morgan and Givens, JJ., concur.

Ailshie, J., took no part in the decision.